IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDNA GARCIA-DIPINI | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | NO. 21-cv-02186-RAL |
| LARRY PITT & ASSOCIATES | : | |
| Defendant. | : | |

**O R D E R**

Plaintiff Edna Garcia-Dipini, a former employee of Defendant Larry Pitt & Associates, initiated this lawsuit on May 13, 2021. *See* Doc. No. 1 ("Compl."). Ms. Garcia-Dipini claims that Defendant discriminated against her based on her national origin and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e, *et seq*. ("Title VII") (Compl. at ¶¶45–54); that Defendant discriminated against her by failing to provide a reasonable accommodation in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (the "ADA") (*id*. at ¶¶55–57); that Defendant discriminated against her based on her national origin and race in violation of the Pennsylvania Human Resources Act, 43 P.S. § 954 *et seq*. (the "PHRA") (*id*. at ¶¶58–70); and that Defendant retaliated against her in violation of the ADA (*id*. at ¶¶89–90).

On June 29, 2021, Defendant filed its Answer which raised counterclaims for breach of contract and alleged, in part, that Ms. Garcia-Dipini had violated both her employment contract with Defendant's joint venture partner (to which Defendant was a third-party beneficiary) and her employment contract with Defendant by performing unauthorized work for a non-profit company during hours she was employed by Defendant. Doc. No. 7 at 12–18.

Defendant is a Philadelphia-based law firm with multiple satellite offices throughout the Commonwealth of Pennsylvania, including an office in Reading, PA (the "Reading Office"). Doc. No. 43-3 at ¶¶ 2–3 ("Def. SOF"). The Reading Office was opened in 2007 as a joint venture between Defendant and the Law Offices of Tahir Mella. *Id*. at ¶¶7–13. In approximately 2007, Ms. Garcia-Dipini was hired as a legal secretary in the Reading Office. *Id*. at ¶12. As described in Defendant's Statement of Facts,[1] Ms. Garcia-Dipini is Hispanic and bilingual in Spanish and English. *Id*. at ¶¶17, 76. Ms. Garcia-Dipini's job duties included translation services for Spanish-speaking clients. *Id*. at ¶16. Ms. Garcia-Dipini was also responsible for client intake, handling phone calls, scheduling, paperwork, and light cleaning of the Reading Office, among other duties. *Id*. at ¶¶14–16, 18. Throughout the course of her employment, Ms. Garcia-Dipini had difficulty performing her job duties, had frequent attendance issues, and often had confrontations with her supervisor and other employees. *Id*. at ¶¶23–38.

While employed by Defendant, Ms. Garcia-Dipini was diagnosed with hyperthyroidism. *Id*. at ¶47. In 2017 and 2018, Ms. Garcia-Dipini expressed a desire to receive bariatric surgery and reached out to her insurance provider and to Defendant to inquire as to whether such a surgery could be covered by her insurance. *Id*. at ¶¶49-50. Defendant looked into including bariatric surgery as part of its offered healthcare plan but determined that, because Defendant is a small business with under 50 employees,

---

[1] My Practices and Procedures require a party filing a motion for summary judgment to file "a separate Statement of Facts (the "Statement") containing a numbered, paragraph-by-paragraph recitation of the facts that the moving party contends are undisputed, with specific page references to the joint appendix in support of each paragraph." Judge Lloret's Policies and Procedures, at 3 (available at: https://www.paed.uscourts.gov/sites/paed/files/documents/procedures/llopol.pdf). The party opposing summary judgment must "file a separate Counterstatement of Facts that responds to each paragraph of the Statement by accepting or rejecting the contention in the paragraph." *Id*. at 3–4. Defendant filed its statement of material facts, (Doc. No. 43-3), but Ms. Garcia-Dipini failed to respond. Accordingly, the facts in Defendant's Statement are deemed admitted.

no carrier would offer coverage. *Id.* at ¶52. Coverage for bariatric surgery was not available to any of Defendant's employees. *Id.*

On September 19, 2019, an incident occurred at the Reading Office between Ms. Garcia-Dipini and one of Defendant's attorneys, Andrea Colton, Esquire. *Id.* at ¶81. On that date, Ms. Colton was scheduled to travel to the satellite Reading Office to meet with clients, but no clients were actually scheduled for appointments. *Id.* at ¶82. It is Defendant's policy that, in such a situation, the satellite office employee must call the attorney and advise that the attorney had no appointments. *Id.* Rather than call Ms. Colton, Ms. Garcia-Dipini sent her a text message, which Ms. Colton did not receive. *Id.* at ¶83. As a result, Ms. Colton did not know that she had no appointments until she had already traveled to the Reading Office. *Id.* When Ms. Colton arrived, Ms. Garcia-Dipini was not present. *Id.* at ¶84. When Ms. Garcia-Dipini returned later that day, "there was a heated verbal exchange between herself and Ms. Colton" which caused Ms. Colton to leave the Reading Office. *Id.* at ¶86. Ms. Garcia-Dipini was absent from the Reading Office because she was attending a luncheon "which she had not been authorized to attend either personally during business hours or on behalf of Larry Pitt & Associates." *Id.* at ¶89. Following the altercation, Ms. Garcia-Dipini called Mr. Pitt and "informed him that she was taking the rest of the day off because of the emotional distress the situation put on her." *Id.* at 90. On September 23, 2019, Ms. Garcia-Dipini was informed that her employment was terminated "due to her history of insubordination and her confrontation with Ms. Colton on September 19." *Id.* at ¶91.

On or about July 13, 2020, Defendant learned for the first time that Ms. Garcia-Dipini was the CEO of a non-profit organization which she had founded in 2007. *Id.* at ¶92. Following Ms. Garcia-Dipini's termination, Defendant learned that, while

3

employed by Defendant, Ms. Garcia-Dipini had been attending breakfasts and luncheons with local community organizations in the area during normal business hours, without authorization. *Id*. at ¶96. Defendant also learned that Ms. Garcia-Dipini had been doing work on behalf of her non-profit in the Reading Office, during business hours and without authorization, in violation of the terms of her employment. *Id*. at ¶99.

Ms. Garcia-Dipini asserts in her Complaint that she was instead terminated due to her request for reasonable accommodation under the ADA, related to her 2017 and 2018 inquiries regarding bariatric surgery coverage (Compl. at ¶¶23–31), and because she was Hispanic (*id*. at ¶¶31–38). Specifically, she alleges that Defendant's Hispanic employees in the Reading Office were given less favorable employment benefits and were subject to less favorable working conditions than the non-Hispanic employees in the Philadelphia Office. *Id*. at ¶31. Plaintiff has not presented evidence to substantiate her claims.

On November 10, 2021, Ms. Garcia-Dipini's attorney moved to withdraw from his representation, arguing that Ms. Garcia-Dipini's failure to cooperate to complete medical authorizations and discovery requests "hindered counsel's ability to pursue this matter on Ms. Garcia-Dipini's behalf, as well as properly defend Ms. Garcia-Dipini in connection with the counterclaim filed against her." *See* Doc. No. 26. I granted counsel's request on November 12, 2021. Doc. No. 27. On April 13, 2022, Defendant moved for sanctions against Ms. Garcia-Dipini related to her failure to comply with Defendant's discovery requests and the Court's discovery order. Doc. No. 37. On June 15, 2022, I entered an order preventing Ms. Garcia-Dipini from using any evidence that would be responsive to Defendant's unanswered discovery requests: "(a) to defend against Defendant's assertions in its Counterclaim; (b) to respond to a dispositive motion; or

(c) to support Plaintiff's claims for wrongful termination, discrimination and retaliation at the time of trial." Doc. No. 43. I further ordered "that it be accepted as true that Plaintiff failed to mitigate any potential damages." *Id.*

On August 8, 2022, Defendant moved for Summary Judgment. *See* Doc. No. 44. Defendant asks that I dismiss Counts I and III of the Complaint because Ms. Garcia-Dipini failed to present any evidence that she was discriminated against based on her national original and/or race (*see* Doc. No. 44-2 at 9–14); that I dismiss Count II of the Complaint because Ms. Garcia-Dipini's request to include bariatric surgery as part of Defendant's health insurance plan did not constitute a reasonable accommodation (*id.* at 14–17); that I dismiss Count IV of the Complaint because Ms. Garcia-Dipini cannot establish a causal connection between her request for a reasonable accommodation and her termination (*id.* at 18–19); and that I grant summary judgment in Defendant's favor as to its counterclaims for breach of contract because Defendant was a third-party beneficiary and suffered damages as a result of Ms. Garcia-Dipini's breach of her employment contract (*id.* at 20–28). Ms. Garcia-Dipini has failed to respond to Defendant's Rule 56 motion in any way and the deadline for a responsive pleading has long since passed. Defendant's unopposed motion for summary judgment is therefore ripe for disposition.

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56). Even when the non-movant does not respond to the motion for summary judgment

5

or present contravening facts, the reviewing judge must conduct an independent analysis to determine whether the movant is entitled to summary judgment. See Fed. R. Civ. P. 56(e)(3) advisory committee's note to 2010 amendment (recognizing that "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion"); E.D. Pa. Local R. Civ. P. 7.1(c) ("In the absence of a timely response, the motion may be granted as uncontested except as provided under Federal Rule of Civil Procedure 56, or otherwise prohibited by law."). Rather, I must ensure that "the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). An unopposed motion for summary judgment may be granted, therefore, only if the moving party demonstrates that there is no genuine dispute of material fact and it is entitled to judgment as a matter of law.

By failing to file a response within the specified time, "the nonmoving party waives the right to respond to or to controvert the facts asserted in the summary judgment motion." *Reynolds v. Rick's Mushroom Serv.*, 246 F. Supp. 2d 449, 453 (E.D. Pa. 2003) (quoting *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002); citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175–76 (3d Cir. 1990)) (Rufe, J.). In light of my June 6, 2022 Sanctions Order, Ms. Garcia-Dipini is further restricted from presenting any evidence in her favor that would have been responsive to Defendant's ignored discovery request. *See* Doc. No. 43.

Regarding Ms. Garcia-Dipini's claims against Defendant, as district courts within the Third Circuit have recognized, a plaintiff's failure to respond to defendant's arguments for summary judgment on a particular claim constitutes abandonment of that claim. *See e.g. Seals v. City of Lancaster*, 553 F. Supp. 2d 427, 433 (E.D. Pa. 2008) ("[P]laintiff's failure to mention these issues in her summary judgment response

constitutes abandonment of those claims.") (Golden, J.); *Skirpan v. Pinnacle Health Hosps.*, No. 07-1703, 2010 WL 3632536, at *6 (M.D. Pa. Apr. 21, 2010), report and recommendation adopted, No. 07-1703, 2010 WL 3632702 (M.D. Pa. Sept. 10, 2010) ("Indeed, a Plaintiff's failure to respond to these arguments constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues."). Abandonment is "a necessary corollary to the principle that summary judgment is appropriate where the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to that party's case." *McCowan v. City of Philadelphia*, 603 F. Supp. 3d 171, 193 (E.D. Pa. 2022) (Marston, J.) (citing *Campbell v. Jefferson Univ. Physicians*, 22 F. Supp. 3d 478, 487 (E.D. Pa. 2014) (Dalzell, J.). In such circumstances, "the court need not address the merits of defendant's arguments and the motion for summary judgment is granted as unopposed." *Seals*, 553 F. Supp. 2d at 433. Ms. Garcia-Dipini has apparently decided that Defendant's arguments in favor of Summary Judgment do not merit a response. I will hold her to that choice. I find that each of Ms. Garcia-Dipini's claims are abandoned and grant summary judgment in Defendant's favor.

Regarding Defendant's counterclaims, I am satisfied that Defendant has met its burden to prove the elements of breach of contract and to show that no genuine issue of material fact exists. I therefore find that Defendant is entitled to judgment in its favor as to liability with regard to its counterclaims.

**AND NOW**, this 13th day of May 2024, upon consideration of Defendant Larry Pitt & Associate's Motion for Summary Judgment (Doc. No. 19) and related briefing, and for the reasons discussed above, it is:

### ORDERED

1. Defendant's Motion for Summary Judgment is **GRANTED**.
2. Counts I–IV against Defendant are **DISMISSED**, as abandoned.
3. Defendant-Counterclaimant is entitled to judgment in its favor as to liability on its counterclaims.
4. The Parties will contact chambers on or before May 17, 2024 to schedule a hearing on Defendant-Counterclaimant's damages.

**BY THE COURT:**

  /s/ Richard A. Lloret
**RICHARD A. LLORET**
**UNITED STATES MAGISTRATE JUDGE**