IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EDNA GARCIA-DIPINI | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LARRY PITT & ASSOCIATES | : | NO. 21-2186 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                            December 6, 2024

Edna Garcia-Dipini ("Plaintiff"), a former employee of Larry Pitt & Associates ("Defendant"), initiated this employment discrimination case against Defendant, which counterclaimed for breach of contract. The Honorable Richard A. Lloret, to whom this case was previously assigned, allowed Plaintiff's counsel to withdraw, after which Plaintiff proceeded pro se. Judge Lloret then granted Defendant's motion for summary judgment, dismissed Plaintiff's claims as abandoned, found Defendant entitled to judgment in its favor as to liability on its counterclaims, and directed that a hearing be held to determine Defendant's counterclaim damages. Doc. 45. The matter was transferred to me upon Judge Lloret's retirement, and I appointed counsel for Plaintiff. Presently before the court is Plaintiff's counseled motion to dismiss Defendant's counterclaims. For the reasons that follow, I will grant Plaintiff's motion and dismiss Defendant's counterclaims for lack of subject matter jurisdiction.

I.  **FACTUAL BACKGROUND**[1]

In 2007, Defendant, a Philadelphia-based law firm, opened a satellite office in Reading, Pennsylvania, as a joint venture with the Law Offices of Tahir Mella ("Mella"), and hired Plaintiff as a legal secretary in the Reading office. Plaintiff is Hispanic and bilingual in English and Spanish, and her job duties included translation services for Spanish-speaking clients. She was also responsible for client intake, handling phone calls, scheduling, paperwork, and light cleaning of the Reading office. During the course of her employment, Plaintiff had difficulty performing her job duties, frequent attendance issues, and confrontations with her supervisor and other employees.

While employed by Defendant, Plaintiff was diagnosed with hyperthyroidism. In 2017 and 2018, Plaintiff inquired of Defendant and its insurance provider whether the costs of bariatric surgery would be covered as part of Defendant's health plan, but she was told that it would not be covered.

On September 19, 2019, one of the attorneys working for Defendant was scheduled to travel to the Reading office to meet with a client. However, Plaintiff failed to call the attorney to advise her that no clients were scheduled for appointments in Reading that day. Plaintiff was not present in the office when the attorney arrived because she was attending a luncheon for which she had not been authorized to attend personally during business hours or on behalf of Defendant. When Plaintiff returned, she

---

[1] Except where noted, the factual background is taken from Judge Lloret's Order granting summary judgment. Doc. 45 at 2-4. Because Plaintiff did not respond to Defendant's Statement of Facts ("SOF") filed with its summary judgment motion, see Doc. 44-3, Judge Lloret deemed Defendant's SOF to be admitted. Doc. 45 at 2 n.1.

and the attorney had a heated verbal exchange, resulting in the attorney leaving the office. Following the altercation, Plaintiff informed her supervisor that she was taking the remainder of the day off because of the emotional distress of the situation. On September 23, 2019, Defendant terminated Plaintiff due to her history of insubordination and her confrontation with the attorney on September 19.[2]

The following year, on or about July 13, 2020, Defendant first learned that Plaintiff was the CEO of a non-profit organization which she had founded in 2007. Defendant learned that while employed by Defendant, Plaintiff had been attending breakfasts and luncheons with local community organizations in the area during normal business hours, without authorization, and that Plaintiff had been doing work on behalf of her non-profit, during business hours and without authorization, in violation of the terms of her employment.

## II.    PROCEDURAL HISTORY

On May 13, 2021, Plaintiff filed her four-count Complaint against Defendant alleging race and national origin discrimination as well as disability discrimination and retaliation in violation of federal law (Title VII of the civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and the American with Disabilities Act, id. § 12101, et seq.) and state law (Pennsylvania Human Relations Act, 43 P.S. § 954, et seq.) in connection with her

---

[2]In its Answer, Defendant alleged that Plaintiff was terminated because of her unprofessional and insubordinate verbal exchange with a lawyer and another staff member on September 19, which provided grounds for immediate termination. Doc. 7 at 6. In his ruling, Judge Lloret stated based on the SOF that Plaintiff was terminated due to her history of insubordination and the confrontation on September 19. Doc. 45 at 3 (citing Doc. 44-3 ¶ 91).

termination. Doc. 1. In its Answer, Doc. 7, Defendant asserted two counterclaims, alleging that Plaintiff breached her employment contract with Defendant's business partner, Mella, to which Defendant was a third-party beneficiary, and also breached an employment agreement between Plaintiff and Defendant. Id. at 12-18.

In November 2021, counsel for Plaintiff moved to withdraw, which Judge Lloret[3] granted, staying the matter for 60 days to allow Plaintiff time to find new counsel. Doc. 26-29. Judge Lloret granted Plaintiff two additional stay requests, Docs. 28-29, 31, 33, and then denied Plaintiff's third request to extend the stay and set a discovery deadline. Docs. 34-35. Plaintiff had not secured counsel and at that point was proceeding pro se. Judge Lloret granted Defendant's motion to compel discovery and later scheduled a show cause hearing upon Defendant's motion for sanctions filed when Plaintiff failed to provide discovery. Docs. 36-39. Following that hearing, Judge Lloret barred Plaintiff from using any evidence that would be responsive to Defendant's discovery requests either in support of her claims or in defense of Defendant's counterclaims. Doc. 43.

On August 8, 2022, Defendant filed a motion for summary judgment as to both Plaintiff's claims and Defendant's counterclaims. Doc. 44. Plaintiff, who remained pro se, did not file a response. Nearly two years later, on May 13, 2024, Judge Lloret granted summary judgment in favor of Defendant as to Plaintiff's claims, and in light of Plaintiff's failure to respond to the motion, also held that Defendant "is entitled to

---

[3] The Honorable Joseph F. Leeson referred the matter to Judge Lloret for all purposes after the parties consented to magistrate judge jurisdiction. Doc. 21.

judgment in its favor as to liability" on its counterclaims against Plaintiff. Doc. 45 at 7, 8. Judge Lloret also directed the parties to contact his chambers to schedule a hearing to determine Defendant's counterclaim damages. Id. at 8. Plaintiff sought reconsideration of Judge Lloret's order, stating that she believed the case was dismissed after her lawyer withdrew and was not aware that the proceedings continued until she received the summary judgment order. Doc. 46. Judge Lloret denied reconsideration. Doc. 47.

The matter was reassigned to me following Judge Lloret's retirement.[4] Doc. 48. On June 18, 2024, I held a telephone conference with pro se Plaintiff and defense counsel in anticipation of scheduling the damages hearing contemplated by Judge Lloret's order. Doc. 56. During that teleconference, Plaintiff again expressed a lack of understanding and confusion regarding the status of her case and her obligations as a pro se litigant. As a result, I granted Plaintiff's subsequent motion for appointment of counsel. Docs. 59, 64.[5]

On August 2, 2024, Plaintiff filed a counseled letter arguing that, with respect to the counterclaims, the court lacked jurisdiction, the applicable statute of limitations bars relief, and the counterclaims lack merit. Doc. 63. Defendant filed a letter response, arguing that Judge Lloret has already entered judgment in its favor on the counterclaims, that the court has jurisdiction to rule on the counterclaims, and that Plaintiff's asserted

---

[4] The parties again consented to magistrate judge jurisdiction. Docs. 50 & 53.

[5] I referred the matter to the court's Employment Panel for Pro Se Plaintiffs, and thereafter appointed attorney Ari Karpf, Esquire, who accepted the case from the Panel. Docs. 60, 61, 64.

5

defenses were either waived or lack merit. Doc. 66. By Order dated September 18, 2024, I construed Plaintiff's counseled letter as a motion to dismiss the counterclaims and ordered oral argument. Doc. 70. I held oral argument on October 7, 2024. Doc. 73 ("N.T. 10/7/24").

### III.  DISCUSSION

Initially, to the extent Judge Lloret granted summary judgment for Defendant on Plaintiff's federal and related state law claims, I am bound by that determination by the law of the case doctrine. See, e.g., Saint-Jean v. Palisades Interstate Park Comm'n, 49 F.4th 830, 836 (3d Cir. 2022) ("As a prudential principle, law of the case holds that a rule of law announced in a case should later be applied to 'the same issues in subsequent stages in the litigation.'") (citing In re Resyn Corp., 945 F.2d 1279, 1281 (3d Cir. 1991) and quoting Devex Corp. v. Gen. Motors Corp., 857 F.2d 197, 199 (3d Cir. 1988)). However, subject matter jurisdiction cannot be waived and can be raised at any time. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); Brown v. Philadelphia Hous. Auth., 350 F.3d 338, 341, 346-47 (3d Cir. 2003) (lack of subject matter jurisdiction cannot be waived and defenses relating to subject matter jurisdiction can be raised at any time, including on appeal) (citing, inter alia, Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)). Once jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence. See, e.g., JTH Tax LLC v. Foster, 691 F.Supp.3d 691, 701 (W.D. Pa. 2023) (citing Packard v. Provident Nat'l Bank, 994

F.2d 1039, 1045 (3d Cir. 1993); <u>McNutt v, Gen. Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936)).

In her complaint, Plaintiff asserted jurisdiction under 28 U.S.C. sections 1331 (federal question) and 1343 (civil rights), because she alleged violations of her rights under federal employment law. Doc. 1 ¶ 6. Defendant asserted state-law breach of contract counterclaims and did not assert any independent basis for the federal court's jurisdiction of the counterclaims. Doc. 7 at 12-18. Now that the jurisdiction question has been raised, Defendant asserts jurisdiction under section 1367, entitled "Supplemental jurisdiction." Doc. 66 at 2-3; <u>N.T.</u> 10/7/24 at 3. That section provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Defendant also asserts that the counterclaims are compulsory within the meaning of Rule 13, and thus must have been brought or Defendant would have lost any right to raise them in any other forum. Doc. 66 at 2 (citing F.R.C.P. 13(a)(1)(A) ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.")).

Plaintiff asserts that Judge Lloret never determined whether the federal court had jurisdiction under section 1367 or any other provision, and that had he done so he would have declined to exercise jurisdiction. Doc. 63 at 4. As to Rule 13, Plaintiff argues that

7

the counterclaims do not meet the definition of compulsory, and the court lacks any independent ground for jurisdiction of the counterclaims. Id. at 3-4.

As an initial matter, Plaintiff is correct that Judge Lloret did not address jurisdiction when granting summary judgment for Defendant on its counterclaims. Indeed, Judge Lloret's entire analysis of the counterclaims consisted of the following:

> Regarding Defendant's counterclaims, I am satisfied that Defendant has met its burden to prove the elements of breach of contract and to show that no genuine issue of material fact exists. I therefore find that Defendant is entitled to judgment in its favor as to liability with regard to its counterclaims.

Doc. 45 at 7. Thus, after dismissing Plaintiff's claims against Defendant (over which the court indisputably had jurisdiction), Judge Lloret proceeded to grant summary judgment on Defendant's exclusively state law counterclaims without addressing whether the court had jurisdiction to do so -- a question the court could have raised on its own. See, e.g., Vanderwiele v. Murphy, Civ. Action No. 05-5085, 2005 WL 2396973, at *1 (E.D. Pa. Sept. 27, 2005) ("Lack of subject matter jurisdiction is a ground for dismissal and may be raised at any time by the parties or by the court *sua sponte*.") (quoting Walls v. Ahmed, 832 F.Supp. 940, 941 (E.D. Pa. 1993)). Therefore, the question of subject matter jurisdiction of the counterclaims is properly before me.

I begin by observing that the "case or controversy" language for supplemental jurisdiction set forth in section 1367, and the "transaction or occurrence" language for compulsory counterclaims set forth in Federal Rule of Civil Procedure 13(a), are used interchangeably, including in the Third Circuit. See Stewart v. Lamar Advert. of Penn

8

LLC, Civ. Action Nos. 03-2914, 03-2690, 03-5293, 2004 WL 90078, at *1 (E.D. Pa. Jan. 14, 2004) ("If a counterclaim is characterized as compulsory under [Rule 13(a)], it necessarily derives from the same cause or controversy as the claims over which the court has original jurisdiction [pursuant to section 1367(a)].")  At oral argument, the parties agreed that the language of section 1367 and Rule 13(a) are interchangeable.  N.T. 10/7/24 at 4.  Thus, if a counterclaim is "compulsory" under Rule 13(a), then the federal court has section 1367(a) supplemental jurisdiction.

Generally, "claims form part of the same case or controversy if they 'derive from a common nucleus or operative fact' and are 'such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Kovalev v. Callahan Ward 12th Street LLC, 548 F.Supp.3d 498, 504 (E.D. Pa. 2021) (quoting Carnegie-Mellon Univ. v. Cahill, 484 U.S. 343, 349 (1988) (alteration in original).  "'The test for a 'common nucleus of operative fact' is not self-evident' [but] is met 'when the same acts violate parallel federal and state laws' or where state and federal claims are 'merely alternative theories of recovery based on the same acts.'" Id. (quoting Lyon v. Whisman, 45 F.3d 758, 760 (3d Cir. 1995)).[6]

In the context of employment discrimination suits, it is not uncommon that an employer brought to court by a former employee responds by asserting counterclaims alleging wrongdoing during the employment relationship.  When questions of jurisdiction

---

[6] Applying this test, it is clear the court had supplemental jurisdiction of Plaintiff's state law employment claims, because they arose from the identical factual allegations as her federal employment claims.

9

of the counterclaims arise, courts focus on the relationship between the plaintiff's claims and the defendant's counterclaims, particularly whether the parties rely on the same evidence to both establish their claims and to the defend against the claims of their opponent.  Under such circumstances, "courts have declined to dismiss state law counterclaims . . . where the counterclaims go to an element of the plaintiff's discrimination suit."  Brooks v. Valley Day School, Civ. No. 14-5506, 2015 WL 4770759, at *4 (E.D. Pa. Aug. 11, 2015) (citing Nwoga v. Cmty. Council for Mental Health & Retardation, Inc., Civ. Action No. 12-5393, 2013 WL 705917, at *10 (E.D. Pa. Feb. 27, 2013) (employer's counterclaims for fraud and indemnification arose from same factual circumstances framing plaintiff's claims for wrongful termination); Plebani v. Bucks Cnty. Rescue Emergency Med. Servs., Civ. Action No. 03-5816, 2004 WL 2244543 at *3 (E.D. Pa. Sept. 30, 2004) (defendant's counterclaim for job misconduct was compulsory because it was logically related to plaintiff's employment discrimination suit)).

For example, the plaintiff in Brooks had been employed as the finance director of a school and alleged that his termination was based on his mental health condition and on his request for leave due to his physical health condition, in violation of the Americans with Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA").  2015 WL 4770759.  The plaintiff alleged that he experienced a flare up of his mental health condition while working on the audit of a school, and that his employer refused an accommodation.  Id. at *1.  The plaintiff took FMLA leave while the project was ongoing, and when he returned to work and again requested an accommodation for his

10

mental health condition, he was terminated. Id. The defendant school asserted two counterclaims. First, the school alleged that the plaintiff breached a written employment contract by violating his duties which included ensuring the school met certain state and federal guidelines and regulations. Id. at *2. Specifically, a few months prior to his termination, the school learned that the plaintiff had not filed necessary paperwork to maintain funding for a lunch program, and had deceived the school's board about his efforts to comply with the program's requirements, and the school claimed that it terminated his employment when it became aware of the extent of his poor performance. Id. The school asserted a second counterclaim based upon the plaintiff's failure to file necessary paperwork with the Internal Revenue Service ("IRS"), which the school discovered after the plaintiff's termination. Id.

Applying the principle that courts decline to dismiss counterclaims that "go to an element of the plaintiff's discrimination suit," Brooks, 2015 WL 4770759, at *4 (citing Stewart, 2004 WL 90078, at *2), the court distinguished between the breach of contract counterclaim that was based on the lunch program paperwork and the breach of contract counterclaim that was based on the IRS paperwork. As to the first, the court found the necessary logical relationship based on the elements of the claims and counterclaim.

> Defendant's counterclaim that Plaintiff breached his employment contract by failing to file the documentation required for Defendant's participation in the [lunch program] bears an abundantly logical relationship to Plaintiff's discrimination claim. Defendant alleges that Plaintiff failed to perform his required duties, which not only breached his contract, but was the very basis for his termination. Proof of the underlying counterclaim will involve proof of the same underlying facts necessary for Defendant to establish a

11

> legitimate nondiscriminatory reason for Plaintiff's termination. In turn, rebuttal of the counterclaim will require the same evidence necessary for Plaintiff to prove that Defendant's asserted non-discriminatory reason was nothing more than pretext.

Id. at *5 (citations omitted). Accordingly, the counterclaim was compulsory, and the court declined to dismiss it. Id. In contrast:

> The same cannot be said for the portion of Defendant's counterclaim alleging that Plaintiff breached his employment contract by failing to file the necessary paperwork with the IRS. Defendant concedes that it did not discover the facts underlying this claim until after it terminated Plaintiff. As such, Defendant would not be able to argue that this allegation was one of the reasons Plaintiff was terminated.

Id. The court also rejected the argument that the second counterclaim logically grew out of the first, explaining that "[p]roof of [the second counter]claim will require inquiry into facts that are completely unrelated to whether Plaintiff was terminated as a result of his disability for reasons related to his job performance." Id. Therefore, the court found the second counterclaim to be permissive and, because it arose under state law with no independent federal jurisdictional basis, dismissed it. Id.

Similarly, in Stewart, the plaintiffs were a wife and husband, both of whom worked for and were terminated by the defendant. 2004 WL 90078. The husband was terminated following investigation of a report of racism, and the husband alleged that the termination constituted age and race discrimination whereas the employer relied upon its investigation to defend the termination. Id. at *1, 3. Sometime following the husband's termination the wife was also separated from employment, and in the complaint she claimed that that the defendant fired her based on her gender and on her husband's age

and the false claim against him. Id. at *1. The defendant, on the other hand, alleged that the wife routinely falsified reports and that her husband regularly performed her job functions on her behalf, and that once her husband was fired the wife stopped coming to work and abandoned her job. Id. at *3. The employer lodged counterclaims against both plaintiffs for fraud, unjust enrichment, and breach of duty of loyalty. Id. at *1.

In ruling on the plaintiffs' motion to dismiss the counterclaims, the district court distinguished between the sets of claims involving each plaintiff. The court found that the counterclaims against the wife were sufficiently related to her claims against the employer to render the counterclaims compulsory, and therefore denied the wife's motion to dismiss. Stewart, 2004 WL 90078 at *3. In contrast, because the defendants' allegations regarding the husband's purported fraudulent acts did not relate to the same facts that were essential to his age and race discrimination claims, the court found the counterclaims against the husband to be permissive and therefore granted the motion to dismiss as to those counterclaims, finding no independent basis for jurisdiction. "[T]he sole connection between [the husband]'s claims and the counterclaims is that both relate to [the husband]'s employment," which "alone does not suffice to establish that the counterclaim arises from the same 'transaction or occurrence'" as the husband's claims. Id.

Similar outcomes have occurred in other cases in which an insufficient connection was found between an employee's claims and a former employer's counterclaims. For example, in Spencer v. Banco Real, S.A., the plaintiff brought Title VII claims for discrimination and retaliation in employment, and the defendant counterclaimed

13

regarding the plaintiff's alleged theft and conversion of proprietary information including customer lists and trade secrets. 623 F. Supp. 1008 (S.D.N.Y. 1985). The district court concluded that the employer's state-law counterclaims were not logically related to the employee's claims, rendering the counterclaims permissive rather than compulsory. Id. at 1012. Also, in Cicek v. Green Station Auto Service Inc., the plaintiff brought federal wage claims against the employer alleging failure to pay overtime, unlawful deductions from wage, and failure to provide wage notices, and the employer counterclaimed for breach of the faithless servant doctrine and tortious interference with business relations by forging customers' signatures, forging invoices and receipts, and stealing money. Civ. No. 23-5448, 2024 WL 2258312, at *4 (E.D.N.Y. May 17, 2024). The district court granted the plaintiff's motion to dismiss the counterclaims because they did not share a "common nucleus of operative fact" with plaintiff's wage-related claims, and the employment relationship alone was insufficient to support supplemental jurisdiction. Id. at *5.

     By way of comparison are employment cases in which counterclaims against a former employee were found to be compulsory and thereby satisfied federal court jurisdiction. For example, in Burton v. Label, LLC, the plaintiff worked for the defendant clothing company and also had his own clothing company. 344 F. Supp.3d 680 (S.D.N.Y. 2018). The court determined that the plaintiff's claims including breach of contract, negligent misrepresentation, and defamation arose out of same transaction or occurrence as the employer's counterclaims including Lanham Act and tortious interference, because both sets of claims "relate to the underlying circumstances that

soured the parties' business relationship and competition for the same clients, namely, [the plaintiff]'s behavior while working for [the defendant], and the representations made by each party about the other to potential clients." Id. at 704.  Similarly, in Healy v. Pavarini Construction Co., the plaintiff sued her former employer alleging sexual harassment by one of the company's vice presidents and retaliation for terminating her when she reported the harassment.  Civ. No. 06-20663, 2006 WL 8433546, at *2 (S.D. Fla. July 19, 2006).  The defendant-employer counterclaimed, alleging the plaintiff falsely accused the individual of sexual harassment and misappropriated business records following termination.  Id.  The district court denied the plaintiff's motion to dismiss the counterclaims, finding that "the same operative facts" that served as the basis of Plaintiff's gender discrimination and retaliation claims were integral to the defendant's counterclaims.  Id.

Applying these principles here, it is apparent that Defendant's counterclaims are permissive rather than compulsory under Rule 13(a), and that the court does not have supplemental jurisdiction of the counterclaims under section 1367(a).  To establish the elements of her discrimination and retaliation claims, Plaintiff would need to demonstrate her race and national origin, her request for coverage for her medical condition, and her termination.  To defend these claims, Defendant must establish its non-discriminatory basis for the termination, consisting of Plaintiff's history of insubordination and her behavior to the lawyer at the Reading Office on September 19, 2019.  To prevail on either of its contract-based counterclaims, Defendant would need to establish the existence of an enforceable contract, breach by Plaintiff, and damages arising from the breach.

15

Rebuttal of these counterclaims does not require Plaintiff to rely on the same evidence she needs in order to prove that Defendant's asserted non-discriminatory reason for her termination was pretextual.

Defendant disputes this, asserting that the counterclaims are compulsory because Defendant "relies on the same facts in the underlying counterclaim as the reason for [Plaintiff's] termination." N.T. 10/7/24 at 4-5. That is, Defendant argues that the reason for Plaintiff's termination -- insubordination -- existed earlier than the September 19, 2019 workplace incident, insofar as Defendant alleges that Plaintiff's actions are the reason Defendant's partnership with the Mella firm dissolved. Id. at 5 ("these were the same reasons that ultimately led to her termination" and "because [Plaintiff] wouldn't perform her job duties as to Mr. Mella, these were the same reasons why [Defendant] eventually terminated [Plaintiff's] employment").[7] Defendant argues that it also raised the affirmative defense that Plaintiff was fired for cause, with facts developed showing that the cause was her "history of insubordination." Id. at 10-11. According to Defendant, there is a "logical relationship" because both Plaintiff's termination and her purported breach of contract can be traced to Plaintiff's history of insubordination, with the result that the contract-based counterclaims should be construed as compulsory. Id. at 11.

---

[7] It is worth noting that Plaintiff was an at-will employee of Defendant and that Defendant retained Plaintiff as an employee for two years beyond the dissolution of Defendant's relationship with Mella.

I disagree. In denying Plaintiff's allegation that she was terminated for "pretextual reasons," Defendant stated in its Answer: "Plaintiff was fired for cause and specifically told why she was fired. Plaintiff engaged in an unprofessional and insubordinate verbal exchange with a lawyer and another staff person employed by [Defendant]. Plaintiff was observed screaming and cursing at both employees. Plaintiff's conduct provided grounds for her immediate termination." Doc. 7 ¶ 40. To the extent Defendant would rely on these events to defeat Plaintiff's claims of discrimination or retaliatory termination, there is no overlap with Defendant's counterclaims that Plaintiff breached her employment contract by working for her own business when she should have been working for Defendant and Mella. Even if Defendant countered Plaintiff's claims by relying on her "history of insubordination" as part of the reason for her termination, the counterclaims would still not arise from the same set of operative facts. Simply put, the reason for Plaintiff's termination is not integral to proving or defending against Defendant's contract-based counterclaims.

Rather, the evidence that allegedly supports Defendant's counterclaims consists of Plaintiff's contemporaneous work as president of her own non-profit, the existence of which Defendant did not discover until July 2020, and which therefore could not have played any role in her termination on September 23, 2019. Defendant essentially seeks to attach a causal connection between Plaintiff's non-profit work and Defendant's decision to terminate her employment, when no such connection was known to exist at the time of the termination. The contract-based counterclaims are therefore permissive rather than

compulsory, and because they arise out of state law with no independent basis for federal jurisdiction, they should be dismissed.  See, e.g., Brooks, 2015 WL 4770759, at *5.[8]

Defendant argues in the alternative that the court should exercise jurisdiction over its counterclaims under section 1367(c)(3), which states that "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).  Doc. 66 at 2. However, by its terms, section 1367(c)(3) only applies to counterclaims over which the court had supplemental jurisdiction under section 1367(a) to begin with.  That is, section 1367(c)(3) comes into play when the original claims, to which the counterclaims were compulsory, are all dismissed.  Here, I have concluded that the counterclaims were permissive, and thus the court never had jurisdiction to decide them.

## IV.     CONCLUSION

Defendant's state-law counterclaims are permissive rather than compulsory, and given that Plaintiff's claims have been dismissed in their entirety, the court does not have jurisdiction over the counterclaims.  Accordingly, Judge Lloret's Order dated May 13, 2024, is vacated to the extent he entered judgment in Defendant's favor as to liability on its counterclaims, and Defendant's counterclaims will be dismissed.

An appropriate Order follows.

---

[8]Given my finding that the court lacks subject matter jurisdiction, I do not find it necessary to discuss other issues identified in my September 18, 2024 Order, including whether any statute of limitations defense is properly before the court and, if so, whether the statute of limitations bars recovery in whole or in part on either counterclaim.